**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSEPH E. MILLER, | : | Civil No. 07-2020 (JLL) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| DEVON BROWN, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

>    JOSEPH E. MILLER, #218731/SBI 434
>    South Woods State Prison
>    Bridgeton, New Jersey   08302
>        Plaintiff <u>Pro</u> <u>Se</u>

**LINARES, District Judge**

On April 30, 2007, Plaintiff JOSEPH E. MILLER (hereinafter "Plaintiff"), an inmate presently confined at South Woods State Prison, brought this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915, by filing Plaintiff's Complaint (hereinafter "Complaint"). <u>See</u> Docket Entry No. 1.

### BACKGROUND

On April 18, 2007, this Court issued an Order (hereinafter "April Order") dismissing Plaintiff's Complaint for failure to

conform to the requirements set forth in Rules 8(a) and (e) of the Federal Rules of Civil Procedure.  <u>See</u> Docket Entries Nos. 2 and 3. The dismissal was without prejudice to Plaintiff's filing of an amended complaint.  <u>See</u> <u>id.</u>

On April 31, 2007, Plaintiff filed an amended complaint (hereinafter "Complaint II").  <u>See</u> Docket Entry No. 5.  The Complaint II is comprised of the following:

(A)  twenty-six causes and sub-causes of action, <u>see</u> Docket Entry No. 5, at 16-23,

(B)  a seven-page long list of Defendants, intermitted by repeated generalities, such as that Defendants were "[h]aving full judicial authority" or "full authority to act," and laced with claims too numerous to reproduce in the instant opinion, such as "willfully chose to either ignore or defer responsibility to others," "fal[ed] to act responsibly to resolv[e] [a] violation," "<u>lied</u> in writing about offers made and requested to/by [P]laintiff" (emphasis in original), "chose to ignore [P]laintiff's written requests for further evidence," "sanctioned 'open-door' policy by non-interference," "stated [a] disdain for . . . law [by saying,] 'I don't give a f--k about the law'" (editing in original), "performed . . . an <u>illegal</u> investigation,"(emphasis in original), and "openly denied . . . responsibility [to monitor the frequency of . . . service]," to name a few. <u>See</u> Docket Entry No. 5, at 2-7.

2

(C) These less-than-clear allegations are supplemented by Plaintiff's nine-page diary-like "Factual Allegations." <u>See</u> <u>id.</u>, at 8-16. The diary encompasses Plaintiff's observations over various periods of time beginning in 2004, as well as various particular events, subdivided into twenty-two entries. <u>See</u> <u>id.</u> The Court notes that the diary of events begins on May of 2004, that is, three years prior to Plaintiff's filing of his original Complaint. Plaintiff's claims with respect to violations that took place more than two years prior to Plaintiff's filing of his original Complaint are time-barred, and therefore, will not be entertained by this Court.[1]

---

[1] The statute of limitations in a § 1983 action is determined by state law. <u>See</u> <u>Wilson v. Garcia</u>, 471 U.S. 261, 276 (1985). Here, the applicable statute of limitations is two years. <u>See</u> <u>Bougher v. Univ. of Pittsburgh</u>, 882 F.2d 74, 78 (3d Cir. 1989). Therefore, all claims which accrued prior to May 1, 2005, are subject to dismissal as time-barred.

Section 1983 action accrues when the Plaintiff knew or should have known of the injury on which his claim is predicated. <u>See</u> <u>Sameric Corp. of Del. v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998). While Plaintiff appears to be under the impression that his state litigation of such claims was mandatory, and that such state litigation somehow "tolled" the statute of limitations for the purposes of Plaintiff's instant action, <u>see</u> Original Compl. ¶5, Plaintiff errs: Section 1983 claims require <u>administrative</u> exhaustion. <u>See</u> 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted").

The gist of Plaintiff's twenty-two "Factual Allegations" is comprised of essentially fourteen premises:

1.   The failure of prison authorities to conduct laundry service on a weekly basis, thus subjecting Plaintiff to bi-weekly or even tri-weekly laundry service (during the time-barred period), see id. at 9;

2.   The insufficiency of maintenance and repair of prison showers resulting in missing tiles and tiles with residue (during the time-barred period), see id. at 9;

3.   Entry of a disciplinary charge against Plaintiff on June 9, 2005, on the basis that Plaintiff's fourteen grievances and fifteen letters relating to the laundry and shower services abused the prison's grievance policy, see id. at 9-10;

4.   Entry of certain false statements and/or schedules (not available to inmates and/or not utilized by the prison and/or not reflecting the dates of laundry service as recalled by Plaintiff) into disciplinary charge evidence, and partiality of investigation conducted in connection with the disciplinary charge, see id. at 10-11;

4

5.   False statements made by certain corrections officers in their official "hearing forms" and/or during Plaintiff's disciplinary hearing,[2] see id.;

6.   Prison officials ignoring Plaintiff's requests for an extension of time to appeal an unspecified decision and by erroneously advising Plaintiff that his "re-appeal" would not be entertained, see id. at 12;

7.   Plaintiff's initial appeal being denied much too speedily for Plaintiff's taste and without additional investigation that Plaintiff felt was appropriate, and by Plaintiff's "re-appeal" being also denied, see id.;

8.   Plaintiff's cell being searched on July 14, 2005, in a fashion which Plaintiff believed to be with "no jurisdiction" and not in accordance with a state law provision for scheduling searches, and by subjecting Plaintiff to a random drug test, which Plaintiff suspected to be purposeful rather than random, see id. at 13;

9.   The cleaning of Plaintiff's cell with disinfectants and materials that Plaintiff found to be insufficient and in

---

[2] Plaintiff's already hard-to-follow account is even more bewildering in view of Plaintiff's simultaneous allegations that one of the Defendants, Officer Moreno, falsified his statements in order to impose an unsubstantiated disciplinary charge upon Plaintiff, see Docket Entry No. 5, at 10, yet testified truthfully and provided information helpful to Plaintiff during Plaintiff's disciplinary hearing. See id. at 12.

a fashion that Plaintiff deemed not thorough enough, and by officer's reply "No, you guys are dirty anyway," to Plaintiff's demand for stronger disinfectants, see id.;

10. Prison officials finding, in Plaintiff's cell, an item of contraband, which Plaintiff suspected to have been "planted" by prison officials, as well as by prison officials' denial of Plaintiff's request to conduct fingerprint testing of the contraband item and related polygraph testing,[3] see id. at 14-15;

11. Prison officials searching Plaintiff's cell without Plaintiff being present in violation of a state law provision, see id. at 14;

12. Theft of Plaintiff's twenty-one floppy discs from Plaintiff's cell by an unknown thief, see id.;

13. Charging more than ten cents per copy per page[4] in violation of a state law provision, and not responding to Plaintiff's complaint about the "inflated" price for copies, see id. at 15;

---

[3] Since one cannot "fingerprint" a contraband item or submit a contraband item to a polygraph test, it appears that Plaintiff wished to submit the prison officials and/or the prison's general population to these tests.

[4] Plaintiff's Complaint II does not specify the specific price of copying per page.

14. Allowing an officer who was insufficiently credible to Plaintiff's taste to testify as a witness during Plaintiff's hearing about the contraband item, see id.

As a preliminary matter, the Court notes that Plaintiff's Complaint II acknowledges that (a) all disciplinary charges against Plaintiff were eventually dismissed, and that(b) Plaintiff filed an action against Defendants in a state court on the basis of the same event, and that this action is currently pending. See id. at 16.

In liberally construing Plaintiff's Complaint II, this Court surmises the following:

(a) Plaintiff's allegations about the disinfection of his cell (and seemingly time-barred claims about bi-weekly or tri-weekly laundry service and imperfect state of prison showers) attempt to allege a violation of Plaintiff's Eighth Amendment rights with respect to Plaintiff's conditions of confinement;

(b) Plaintiff's allegations about the language used by prison officials attempt to set forth an Eighth Amendment cruel and unusual punishment claim;

(c) Plaintiff's allegations about the excessive cost of the prison's copy services attempt to set forth a First Amendment claim with respect to Plaintiff's access to courts;

(d) Plaintiff's allegations about the loss of his floppy discs, the non-responses to Plaintiff's letters and refusals to conduct fingerprinting and polygraph tests, or to entertain

7

Plaintiff's appeals, as well as Plaintiff's allegations about false charges and/or statements by officers attempt to set forth Fourteenth Amendment claims; and

(e)  Plaintiff's allegations about prison officials instituting disciplinary hearing(s) against Plaintiff, searching Plaintiff's cell and conducting a drug test attempt to set forth a retaliation claim.

To the extent that Plaintiff asserts such claims based upon the allegations presented, none of Plaintiff's allegations presents a claim upon which relief may be granted.  Therefore, for the reasons that follow, Plaintiff's Complaint II will be dismissed.

## STANDARD OF REVIEW

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous."  Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b),

that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.  However, in determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519, 520 (1972); United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992).   When considering a Rule 12(b)(6) motion, the Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (citation omitted).  The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.  Thus, a pro se complaint may be dismissed for failure to state a claim only if the allegations set forth by plaintiff cannot be construed as supplying facts in support of a claim, which would entitle the plaintiff to relief.  See Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981); see also Erickson v. Pardus, 2007 U.S. LEXIS 6814, at *8 (June 4, 2007) (plaintiff's "statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'") (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007) (quoting, in turn, Conley v. Gibson, 355 U.S. 41 (1957)).

## DISCUSSION

**A.**   **Eighth Amendment Claims**

    **1.**   **Conditions of Confinement**

The Eighth Amendment prohibits infliction of cruel and unusual punishment, thus mandating prison officials to provide humane conditions of confinement.  The Constitution, however, "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), and prison officials must merely ensure that inmates receive adequate food, clothing, shelter and medical care, plus must "'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  To state a claim under the Eighth Amendment, an inmate must allege both objective and subjective components.  See Wilson v. Seiter, 501 U.S. 294, 298-301 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation,"[5] hence requiring that the deprivation sustained by a prisoner be "extreme deprivations." Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The subjective component requires that the state actor have acted with "deliberate indifference," that is, with a state of mind equivalent to a reckless disregard of

_____

    [5] Id. at 298 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981))

a known risk of harm.  See Farmer, 511 U.S. at 835-36; Wilson, 501 U.S. at 303.  In sum, an inmate may satisfy (1) the objective component by showing that he was deprived of "the minimal civilized measure of life's necessities," such as minimally suitable food, clothing, shelter, sanitation, medical care and personal safety,[6] and (2) the subjective component by demonstrating that prison officials knew of such substandard conditions or treatment and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety."[7]

In the case at bar, Plaintiff's claims are limited to Plaintiff's dissatisfaction with (1) the disinfectants chosen by prison officials, (2) missing tiles and residue in prison showers, and/or (3) having prison laundry service on bi-weekly or tri-weekly basis.  Plaintiff does not allege that he suffered a physical injury or a disease as a result of these conditions.  While any person's desire for spotless cleaning, perfect washing facilities and weekly laundry service is understandable, lack of such niceties cannot amount to a violation of constitutional magnitude.  For instance, even a complete denial of showers does not rise to the level of an Eighth Amendment violation.  See Gay v. Shannon, 211

---

[6] Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992), superseded by statute on other grounds as stated in Ghana v. Holland, 226 F.3d 175, 184 (3d Cir. 2000)

[7] Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

11

Fed. Appx. 113, 116 (3d Cir. 2006) (restriction on showers and obtaining toiletries does not rise to level of Eighth Amendment violation).   Similarly, unclean cells and limitation of laundry service cannot amount to an Eighth Amendment violation, unless the plaintiff suffered an actual serious physical injury as a result of unsanitary conditions.[8]   Therefore, Plaintiff's conditions of confinement allegations do not state a cognizable constitutional claim and will be dismissed.[9]

      **2.   Verbal Harassment**

      Courts within this district have found that acts of verbal harassment cannot qualify as violations of the Eighth Amendment. See Stepney v. Gilliard, No.   02-5259, 2005 WL 3338370, at *6 (D.N.J. Dec. 8, 2005) ("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms.   '[V]erbal

---

      [8] See, e.g., Moultrie v. Oxley, 2007 U.S. Dist. LEXIS 34439, at *19-22 (D.N.J. May 10, 2007); Hammock v. Bebow, 2005 U.S. Dist. LEXIS 36702 (M.D. Pa. Aug. 30, 2005).

      [9] The fact that any actions by prison officials might have violated state law provisions is of no relevance to this Court's federal law analysis, since "errors of state law cannot be repackaged as federal errors." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).   To the extent that Plaintiff seeks to assert claims arising under state law in this action, the Court declines to exercise supplemental jurisdiction over these claims because all federal claims over which the Court has original jurisdiction are being dismissed.   28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Del. County, Pa., 383 F.2d 1277, 1284-5 (3d Cir. 1993).

harassment or profanity alone . . . no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting <u>Shabazz v. Pico</u>, 994 F. Supp. 460, 474 (S.D.N.Y. 1998)).[10] Since the Plaintiff's allegations of verbal harassment are not cognizable under § 1983, Plaintiff's allegations, to that effect, will be dismissed for failure to state a claim upon which relief may be granted.[11]

**B.   <u>Access to Court Claim</u>**

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  <u>See</u> <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983).  In addition, "[t]he constitutional guarantee

---

[10]  <u>See</u> <u>also</u> <u>Prisoners' Legal Ass'n v. Roberson</u>, 822 F. Supp. 185, 187-89 (D.N.J. 1993) ("Defendant correctly points out that verbal harassment does not give rise to a constitutional violation enforceable under § 1983."); <u>Robinson v. Taylor</u>, 2005 U.S. Dist. LEXIS 20951, at *8 (D. Del. Sept. 26, 2005) ("[M]ere verbal harassment does not give rise to a constitutional violation[; even if it is] inexcusable and offensive, [it] do[es] not establish liability under section 1983") (citations omitted); <u>Abuhouran v. Acker</u>, 2005 U.S. Dist. LEXIS 12864, at *15 (E.D. Pa. June 29, 2005) ("It is well established . . . that . . . verbal harassment, . . . standing alone, do[es] not state a constitutional claim"); <u>Maclean v. Secor</u>, 876 F. Supp. 695, 698 (E.D. Pa. 1995).

[11]  <u>See</u> <u>generally</u> <u>Collins v. Cundy</u>, 603 F.2d 825 (10th Cir. 1979) (dismissing prisoner's claim that defendant threatened to hang him).

of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989); see also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers . . . ." The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis removed).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense. See Lewis, 518 U.S. at 348-51, 354-55; Oliver v. Fauver,

14

118 F.3d 175, 177-78 (3d Cir. 1997).  "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." <u>Lewis</u>, 518 U.S. at 351.

In the case at bar, Plaintiff's payment of more than ten cents per copy alleges no past or imminent "actual injury" which hindered his litigation efforts.  Rather, this payment only alleges that Plaintiff's legal pursuit caused him a few cents more, but in no way obstructed Plaintiff's litigation activities.  Since Plaintiff does not currently suffer from imminent "actual injury," nor has Plaintiff alleged any such injury as having occurred in the past, Plaintiff's access to courts allegations fail to set forth a claim upon which relief may be granted.[12]

---

[12] <u>See</u> <u>generally</u> <u>Turner v. Corr. Med. Servs.</u>, No. 03-048, 2005 WL 1902107 (D. Del. Aug. 10, 2005) (finding that 25-cent copy charges imposed upon inmates do not violate the Constitution).

C.   **Fourteenth Amendment Claims**

1.   **Loss of Property**

While Plaintiff's Complaint II states that Plaintiff's floppy discs were stolen, the Complaint II does not indicate that the discs were stolen by a state official.   Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights only by a person who was acting under color of state law.   Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

28 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must prove two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1113 (3d Cir. 1989).  Thus, if Plaintiff meant to suggest that the discs were stolen by an inmate, Plaintiff's allegations fail to

16

meet the threshold "color of law" requirement, and should be dismissed for failure to state a claim upon which relief may be granted.

Moreover, even assuming, _arguendo_, that Plaintiff meant to allege that his floppy discs were stolen by a prison official while acting under color of law, Plaintiff's allegation still fails to present a cognizable federal claim. The Due Process Clause prohibits a state or local government from depriving a person of property without providing due process of law. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979). To analyze a due process claim, the Court conducts a "familiar two-part inquiry": whether the Plaintiff "was deprived of a protected interest, and, if so, what process was his due." Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982); see also Holman v. Hilton, 712 F.2d 854, 858 (3d Cir. 1983).

Although Plaintiff may have a property interest in his floppy discs, his due process claim nevertheless fails as a matter of law because the New Jersey Tort Claims Act provides all the process that is due. The Third Circuit held in Tillman v. Lebanon County Corr. Facility, that the Due Process Clause does not require prison officials to conduct pre-deprivation hearings when they deduct fees from prisoners' wages because, "if the available postdeprivation procedure is adequate, then that is all the process to which the

17

[prisoner] is due under these circumstances." 221 F. 3d 410, 421 n.12 (3d Cir. 2000).[13]

The New Jersey Tort Claims Act ("NJTCA"), provides an adequate post-deprivation judicial remedy to persons, including inmates such as Plaintiff, who believe they were wrongfully deprived of property at the hands of prison officials.  N.J.S.A. § 59:1-1 et seq.[14] Because the NJTCA is an available remedy providing all the process which is due, Plaintiff's due process claim fails and the Court is constrained to dismiss it pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 2.    Non-responses to Grievances

Since an inmate has no Fourteenth Amendment right to force prison officials to investigate or entertain his grievances, Plaintiff, being an inmate, is not constitutionally entitled to any responses to his grievances by prison officials.  See, e.g., Wilson

---

[13] See generally  Zinermon v. Burch, 494 U.S. 113, 115 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Holman, 712 F.2d at 856.

[14] See generally Holman, 712 F.2d at 857; Asquith v. Volunteers of Am., 1 F. Supp.2d 405, 419 (D.N.J. 1998), aff'd sub nom Asquith v. Dep't of Corr., 186 F.3d 407 (3d Cir. 1999).

v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998).[15]

Moreover, because there is no constitutional right to an effective grievance procedure and "'a state grievance procedure does not confer any substantive constitutional right upon prison inmates,'" Plaintiff's grievances-related claims must be dismissed for failure to state a claim upon which relief may be granted. See Burnside v. Moser, 138 Fed. Appx. 414, 416 (3d Cir. 2005) (quoting Hoover v. Watson, 886 F. Supp. 410, 418 (D. Del 1995)).[16]

### 3.   Demands for Fingerprinting, Polygraph Testing and Appeals

While prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of a criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment. See Wolff v. McDonnell, 418 U.S. 539, 556-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991). The requirements of due process in prison disciplinary

---

[15] See generally McGuire v. Forr, No. 94-6884, 1996 U.S. Dist. LEXIS 3418 at *2, n.1 (E.D. Pa. Mar. 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996).

[16] See, e.g., Gonzalez-Cifuentes v. U.S. Dept. Homeland Sec., 2005 U.S. Dist. LEXIS 33072 at *39 (D.N.J. May 3, 2005)(dismissing inmate's lack of grievance procedure claim and stating that "[i]nmates are not constitutionally entitled to a grievance procedure and the state creation of a grievance procedure does not create a liberty interest requiring procedural protections under the Fourteenth Amendment").

hearings entitle an inmate to: (1) written notice of the charges and at least twenty-four hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) "'a written statement by the factfinder as to the evidence relied upon and the reasons' for the disciplinary action"; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." <u>Wolff</u>, 418 U.S. at 563-67. Consequently, inmates do not have an absolute constitutionally-protected right to confront and cross-examine witnesses at their prison disciplinary hearings. <u>See id.</u> at 567-68.[17] Additionally, a right to appeal disciplinary convictions is not within the narrow set of due process rights delineated in <u>Wolff</u>. <u>See</u> <u>Bruton v. Denny</u>, 2007 U.S. Dist. LEXIS 39473, at *8 (D. Del. May 30, 2007); <u>Counterman v. Fauver</u>, 1989 U.S. Dist. LEXIS 16576 (D.N.J. Nov. 24, 1989) <u>Garfield v. Davis</u>, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983); <u>Greer v. De Robertis</u>, 568 F. Supp. 1370 (N.D. Ill. 1983).

As such, the prison officials' alleged refusal to entertain Plaintiff's demands for the fingerprinting or polygraph testing of the prison officials and/or the prison's entire general population, and/or Plaintiff's appeals (or "re-appeals") did not violate

---

[17] <u>See also</u> <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 321-22 (1976); <u>Young</u>, 926 F.2d at 1404.

Plaintiff's Due Process rights.[18]   Consequently, Plaintiff's allegations related to these matters should be dismissed for failure to state a claim upon which relief may be granted.

### 4.   Allegations About False Charges

The Third Circuit has indicated that "due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports. Thus, so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (citing Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986), cert. denied, 485 U.S. 982 (1988)).   Since Plaintiff's Complaint II expressly acknowledges that Plaintiff successfully rebutted false charges against him, Plaintiff's allegations about these charges should be dismissed for failure to state a claim upon which relief may be granted.[19]

---

[18] See, e.g., Counterman, 1989 U.S. Dist. LEXIS 16576, at *25 (stating that "a failure to administer a polygraph examination to plaintiff during the disciplinary hearing was not a constitutional violation because there is no federally protected right to a polygraph").

[19] See, e.g., Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984) (finding that so long as prison officials provide a prisoner with the procedural avenue meeting the three-element
(continued...)

**D.   Retaliation Claims**

Plaintiff asserts that prison officials brought disciplinary charges, searched his cell, and administered a drug test in retaliation for his filing grievances.  The First Amendment offers protection for a wide variety of expressive activities.  See U.S. Const. amend. I.  These rights are lessened, but not extinguished, in the prison context.  See Turner v. Safley, 482 U.S. 78, 89 (1987).  In assessing the constitutionality of official conduct in the prison context, "inquiry is made into whether a prison regulation that impinges on inmates' constitutional rights is 'reasonably related' to legitimate penological interests."  Id. Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment.  See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate (1) that he was engaged in protected activity (2) that he suffered an "adverse action" by government officials, and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken

---

[19](...continued)
requirement outlined in Wolff, the prisoner has not suffered a constitutional violation); Duncan v. Neas, No. 86-109, 1988 U.S. Dist. LEXIS 12534, at *4 (D.N.J. Aug. 30, 1988) (determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally protected liberty interest . . . . where procedural due process protections were provided").

against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).[20]

While filing grievances and civil complaints is constitutionally protected activity, Plaintiff's allegations as to retaliation by disciplinary actions fail to state a retaliation claim since Plaintiff fails to meet the second threshold requirement of the retaliation test, that is, the "adverse action" requirement. To the contrary, Plaintiff's Complaint II expressly acknowledges that Plaintiff was cleared of all charges and, therefore, suffered no adverse action.

Plaintiff's allegations as to retaliation by searches of Plaintiff's cell and by drug testing similarly fail to state a claim. It appears that, in making this claim, Plaintiff relies only on the temporal proximity between his protected conduct and the prison officials' actions. Temporal proximity may satisfy the third threshold requirement of the retaliation test, that is, the causation element, only when "the timing of the alleged retaliatory action [is] 'unusually suggestive' of retaliatory motive. . . ." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (quotation omitted).[21]

---

[20] See, e.g., Carter v. McGrady, 292 F.3d 152, 157 (3d Cir. 2002).

[21] See also, Rauser, 241 F.3d at 334.

In the case at bar, Plaintiff admits that he continually filed grievances and similar letters with the regularity of about "every-ten-days" during a period of one year (fourteen grievances and fifteen letters during the period from May 2004 to May 2005). See Docket Entry No. 5, at 9.  However, the alleged searches took place on July 14, 2005 – six weeks after Plaintiff's protected activity – and December 30, 2005 – seven months after Plaintiff's protected activity. In view of Plaintiff's filing of a grievance or letter every ten days without any adverse consequence, and the substantial gaps between the alleged retaliations in the form of cell searches and a drug test, this Court finds that the timing of these actions by prison officials was not "unusually suggestive" to meet the third threshold requirement of the retaliation test. Therefore, Plaintiff's retaliation allegations fail to state a claim upon which relief may be granted.[22]

---

[22] Moreover, even if this Court were to construe Plaintiff's allegations with respect to the searches and a drug test as a Due Process – rather than a First Amendment claim – Plaintiff's allegations would likewise be dismissed.  "[R]andom drug testing and searches are common and accepted procedures in the prison environment." Institutional security may necessitate the limitation of inmates' constitutional rights. See Bell v. Wolfish, 441 U.S. 520, 545-46 (1979). For this reason, decisions by prison administrators regarding matters of security, discipline, and administration are accorded great deference.  See id. at 547.  Thus, when a prison regulation or practice impinges on an inmate's constitutional rights, that regulation or practice is valid if it is reasonably related to legitimate penological interests such as institutional security. See Lewis v. Casey, 518 U.S. 343, 361-62 (1996); Washington v. Harper, 494 U.S. 210, 223-24 (1990) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).
(continued...)

_____Accordingly, it appears to the Court that Plaintiff's Complaint II fails to state a claim upon which relief may be granted. However, in light of the difficult-to-read nature of the Complaint II, this Court cannot conclusively determine that a valid legal claim is not buried within its poorly drafted language. As a result, the Court will provide Plaintiff with one, final, opportunity to amend his Complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir. 2002) (stating that unless amendment would be futile, district court may not dismiss complaint without permitting amendment).

---

[22](...continued)

In the case at bar, the searches at issue were conducted in Petitioner's cells and did not involve any physically invasive procedure. They were clearly related to security concerns with respect to contraband and dangerous items that may be concealed by inmates (including Plaintiff) in a confined institution. Thus, the prison officials had a legitimate security concern in conducting routine searches, and that concern clearly outweighs the individual displeasures of Plaintiff, especially since the searches were not intrusive and have not caused any physical harm to Plaintiff. Accord Gonzalez-Cifuentes v. United States Dep't of Homeland Sec., 2005 U.S. Dist. LEXIS 33072 (D.N.J. May 3, 2005).

Similarly, random drug testing serves legitimate penological purposes. See Seale v. Ridge, 1998 U.S. Dist. LEXIS 19458, at *13-14 (E.D. Pa. Nov. 13, 1998). Since Plaintiff's Complaint II indicates that the test was random, at least in the sense of being administered to inmates other than Plaintiff, and Plaintiff admits that he suffered no injury as a result thereof, this Court finds that the prison officials' interests in administering such tests outweigh Plaintiff's displeasure of producing his urine for testing. See id.

Should Plaintiff choose to amend his Complaint II once again, Plaintiff <u>must</u> adhere to the following guidelines:[23]

(1)   Plaintiff <u>shall</u> designate the specific facts of each alleged wrongful action, including the date of this action (either exact or approximate), the circumstances of the action, and the actors <u>directly involved</u> in the action,[24] since a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations.[25] <u>See Evancho v. Fisher</u>, 423 F.3d 347, 352-53 (3d Cir. 2005) (citing <u>Boykins v. Ambridge Area Sch. Dist.</u>, 621 F.2d 75, 80

---

[23] Plaintiff's failure to adhere to the following guidelines will result in dismissal of Plaintiff's complaint, with prejudice.

[24] Plaintiff <u>shall</u> <u>not</u> include an infinite list of "defendants" who, according to Plaintiff, "have full authority" but were not directly involved in the alleged wrongs. <u>See, e.g.</u>, <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005)("'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of <u>respondeat superior</u>.'")(quotation omitted).  Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights.  <u>See id.</u>; <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694-95 (1978).  Thus, if Plaintiff names any defendant on the grounds of supervisory liability, Plaintiff <u>shall</u> state the facts upon which Plaintiff bases such allegations.

[25] For instance, if, in fact, disciplinary charges against Plaintiff were not dismissed in their entirety, Plaintiff shall clearly specify the nature of charges that remain, the actual sanctions imposed upon Plaintiff as a result of these remaining charges, the dates of the violations underlying these charges, and the names of the state officials who were directly involved in filing and hearing the charges, and imposing the sanctions.

(3d Cir. 1980); <u>Hall v. Pa. State Police</u>, 570 F.2d 86, 89 (3d Cir. 1978)).  Additionally, Plaintiff must allege that the alleged wrongdoer deprived him of a federal--rather than state--right, and that this person acted under color of state law. See <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

(2)   Plaintiff <u>must</u> omit all claims addressed in, and dismissed by, this Opinion.

(3)   Plaintiff <u>must</u> omit all claims raised – and currently pending – in Plaintiff's state court action since the doctrine of <u>collateral</u> <u>estoppel</u> would prevent Plaintiff from re-litigating these claims in this Court, regardless of this Court's power to exercise supplemental jurisdiction where applicable.[26]

---

[26] Moreover, Plaintiff <u>shall</u> notify this Court if this entire matter parallels his currently pending state action.  The doctrine of abstention, which has developed since <u>Younger v. Harris</u>, 401 U.S. 37 (1971), "espouse[s] a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances." <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 431 (1982).  The specific elements of the <u>Younger</u> abstention doctrine are that: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." <u>Schall v. Joyce</u>, 885 F.2d 101, 106 (3d Cir. 1989).  Therefore, Plaintiff shall notify this Court if the parties, the claims and the underlying facts in the instant matter are the same as those in Plaintiff's currently pending state action.

## CONCLUSION

For the reasons set forth above, the Court dismisses Plaintiff's Complaint II without prejudice to Plaintiff's filing of an amended complaint.[27]

---

DATED: June 26, 2007

/s/ Jose L. Linares
**JOSE L. LINARES, U.S.D.J.**

---

[27] Should Plaintiff elect to amend his Complaint II, Plaintiff is advised to adhere to Federal Rule of Civil Procedure 8(a), which requires that Plaintiff submit "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff's failure to do so will result in dismissal of Plaintiff's complaint, with prejudice.